IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

KIMBERLY and LUTHER THURMAN,　*
　　　　　　　　　　　　　　　　　*
　　Plaintiffs,　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
v.　　　　　　　　　　　　　　　　*　　CASE NO.: 1:06 CV-709-DRB
　　　　　　　　　　　　　　　　　*
TIMBERLINE HOMES, INC., and　　　*
FLEETWOOD SPRINGHILL HOMES　*
OF GEORGIA, INC., et al.　　　　　　*
　　　　　　　　　　　　　　　　　*
　　Defendants.　　　　　　　　　　*

## DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO COMPEL BINDING ARBITRATION AND MOTION TO STAY

COMES NOW the defendant, Fleetwood Homes of Georgia, Inc. (Fleetwood), and moves this Honorable Court to dismiss the plaintiffs' claims contained in Counts III and IV, or in the alternative, to compel the plaintiffs to submit all their claims to binding arbitration, and to stay the present proceeding accordingly. In support of its motion, the defendant states:

### NARRATIVE SUMMARY OF UNDISPUTED FACTS

On or about July 7, 2004, the plaintiffs purchased a 2002 Fleetwood manufactured home, serial number GAFL234AB75320-AV11 from Timberline Homes, Inc. a co-defendant in this matter. (See Complaint; See also Affidavit of Todd Uhlick, attached hereto as Exhibit "A"). The home was manufactured by Fleetwood on April 26, 2002. (Exhibit "A"). The home was manufactured as a "stock" unit, which means it was not manufactured for a specific customer of the retailer. Id. With the purchase of the subject home, Fleetwood provided an express written limited warranty. Id. Included in the warranty is an arbitration provision. Id. Plaintiffs requested and received warranty repairs on

1

the following dates: May 20, 2002; June 24, 2002; October 29, 2002; November 19, 2002; August 25, 2003; September 22, 2003; November 8, 2003; December 22, 2003; May 1, 2004; May 27, 2004; October 12, 2004; November 22, 2004; February 15, 2005; April 4, 2005; August 24, 2005; October 7, 2005; and November 9, 2005. Id. On or about July 5, 2006, Plaintiffs filed this lawsuit.

Fleetwood manufactured the home in question in Georgia using many materials, including plumbing parts, electrical parts, aluminum and steel products, appliances, wood products, and fabrics from outside of Georgia. (See Exhibit "A"). Fleetwood Homes of Georgia, Inc. is a manufactured housing manufacturer. Id. It manufactures homes at multiple manufacturing facilities in Georgia. Id. The homes it manufactures, including the subject home, incorporate various component parts, including plumbing, electrical, aluminum products, steel products, appliances, wood products, fabrics, etc., which it acquires from suppliers outside of Georgia and from throughout the United States and are shipped to manufacturing plants in Georgia. Id. The subject home was transported via federal and interstate highways from Fleetwood Homes of Georgia, Inc.'s manufacturing facility in Georgia to the retailer's sales location in Alabama and later to the plaintiffs' lot. Id.

Furthermore, the manufactured housing industry is heavily regulated by both federal and state government. In August 1974 the National Manufactured Housing Construction and Safety Standards Act of 1974 (the MHCSS Act) was passed into law, at 42 U.S.C. § 5401, et seq. Pursuant to the MHCSS Act, the Secretary of Housing and Urban Development was required to establish Federal manufactured home construction and safety standards and to set forth rules governing the same. This home was built pursuant to those regulations. (See Exhibit "A"). These circumstances clearly establish a transaction that "involved commerce" to invoke the provisions of the FAA.

2

## **STANDARD OF REVIEW**

If matters outside the pleadings are presented to and not excluded by the Court, a Fed. R. Civ. P. 12(b)(6) motion shall be considered as a motion for summary judgment. Charles J. Arndt, Inc. v. City of Birmingham, 748 F.2d 1486, 1490 (11th Cir. 1984). The standard of review applicable to a Summary Judgment is well established:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and... the moving party is entitled to judgment as a matter of law." This standard can be met by the moving party, in a case in which the ultimate burden of persuasion at trial rests on him, by showing that undisputed evidence entitles him to judgment as a matter of law as to the claim on which he has the burden. Where the burden of proof is on the non-moving party, this standard can be met either by submitting affirmative evidence negating an essential element of the non-movant's claim, or by demonstrating that the non-moving party's evidence itself is insufficient to establish an essential element of his or her claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
>
> The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of an essential element to her claims, and on which she bears the burden of proof at trial. Id. To meet this burden, the non-moving party cannot rest on the pleadings, but must by affidavit or other appropriate means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).
>
> It is the substantive law that identifies those facts which are material on motions for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 258 (1986)...All the evidence and the inferences from the underlying facts must be viewed in the light most favorable to the non-moving party. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990)...The moving party bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983)

Rivers v. Great Dane Trailers, Inc. 816 F. Supp 1525, (M.D. Ala. 1193).

3

# ARGUMENT

## I. COUNT IV OF PLAINTIFFS' COMPLAINT IS DUE TO BE DISMISSED BECAUSE THE IMPLIED WARRANTY SECTIONS OF THE ALABAMA CODE DO NOT NORMALLY APPLY TO MANUFACTURERS

Count IV of Plaintiffs' Complaint is due to be dismissed as to Fleetwood. Count IV of Plaintiffs' Complaint contains allegations against Fleetwood for breach of the implied warranties.

A transaction involving the sale of a manufactured home is to be governed by Alabama's Commercial Code. "Goods" are defined in the Code of Alabama as:

> (1) "Goods" means all things (including specially made manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action...

Ala. Code Ann. § 7-2-105(1) (West 1975).

The manufactured home in the case at bar qualifies as "goods" as set forth in the Alabama Commercial Code since it was movable at the time at which it was identified to the sales contract. The Supreme Court of Alabama has applied Alabama's Commercial Code to a transaction that involved the sale of a manufactured home. Southern Energy Homes, Inc. v. Washington, 774 So.2d 505 (Ala. 2000).

Count IV of Plaintiffs' Complaint should be dismissed. The implied warranty sections of the Alabama Code do not apply to manufacturers. In numerous cases, the Supreme Court of Alabama and the Alabama Court of Civil Appeals have held that the implied warranty sections of the Alabama Code do not apply to manufacturers, absent privity of contract between the manufacturer and the purchaser. No such privity exists in the present case.

In Miller v. Pettibone Corp., 693 So.2d 1365, 1370 (Ala.Civ.App. 1996), rev'd in part on other grounds, Ex parte Miller, 693 So.2d 1372 (Ala. 1997), the Alabama Court of Civil Appeals considered the question, and affirmed a trial court's entry of directed verdict in favor of an equipment manufacturer. Miller involved implied warranty claims for both merchantability and fitness for a particular purpose against the manufacturer of timber cutting equipment. The Miller Court, citing numerous Alabama Supreme Court cases, stated:

> "The [manufacturer] was not the seller of the feller buncher, and, therefore, no privity exists between Miller and the corporation. **Thus, the implied warranties are inapplicable against the [manufacturer]**. See, e.g., Wellcraft Marine v. Zarzour, 577 So.2d 414 (Ala.1990); State Farm Fire & Casualty Co. v. J.B. Plastics, Inc., 505 So.2d 1223 (Ala.1987). Miller presented no evidence that would support a holding that under an express warranty a manufacturer should be treated as a "seller" for purposes of the implied warranty provisions. Wellcraft Marine, 577 So.2d at 419. "Regardless of any express warranties that a manufacturer may wish to give with a product, by their very language the ... implied warranty sections apply to the seller of the product." Id. See also Rhodes v. General Motors Corp., 621 So.2d 945 (Ala.1993). " (Emphasis added)

The plaintiffs have presented absolutely no evidence of any privity of contract between themselves and Fleetwood. No such privity exists. The plaintiffs had no dealings with any employee of Fleetwood prior to the purchase of the home.

In Tucker v. General Motors Corp., 769 So.2d 895 (Ala.Civ.App. 1998), rev'd in part on other grounds, 769 So.2d 903 (Ala. 1999), the Alabama Court of Civil Appeals again addressed claims for implied warranties of merchantability and fitness for a particular purpose against a product manufacturer. The Tucker Court affirmed summary judgment in favor of General Motors, expressly holding that §§7-2-314 and 7-2-315 do not apply to product manufacturers, absent privity of contract. The Tucker Court stated:

5

> "However, Tucker cannot pursue his claim against GM because, as provided in the statute, the implied warranty of merchantability attaches only to the seller of the goods, not the manufacturer. § 7-2-314...
>
> Like the implied warranty of merchantability, the implied warranty of fitness for a particular purpose does not apply to the manufacturer of the goods, only to the seller." § 7-2-315; citing Rhodes v. General Motors Corp., 621 So.2d at 947. Tucker, 1998 WL 178780, p.6 (Ala.Civ.App. 1998).

In Bryant v. Southern Energy Homes, Inc., 682 So.2d 3, (Ala. 1996), the Supreme Court of Alabama affirmed summary judgment in favor of a manufactured home manufacturer on a plaintiffs' claim for breach of implied warranty of fitness for a particular purpose (§7-2-315), stating:

> "Count two of the complaint asserts a breach of the implied warranty of fitness for a particular purpose. Ala. Code 1975, § 7-2-315. **Under Alabama law, the implied warranty of fitness for a particular purpose does not apply to Southern Energy, who was the manufacturer, not the seller, of the mobile home.**"

Bryant, 682 So.2d at 5 (emphasis added).

In the present case, Fleetwood had no part in the sales agreement between the plaintiffs and the retailer. Fleetwood took no part in the plaintiffs' negotiations with the retailer and in fact had no dealings directly with the plaintiffs prior to the purchase of the home.

The subject home was manufactured on April 26, 2002. (See Exhibit "A"). The subject home's invoice indicates the home was a "stock" unit, meaning that it was not requested for a specific retailer's customer. Id. The plaintiff did not purchase the home until July 7, 2004. (See Complaint). Because the subject home was not specifically ordered nor specifically manufactured for the plaintiffs, there is no privity between Fleetwood and plaintiffs and, therefore, Count IV of the Complaint should be dismissed as to Fleetwood for this reason. Horton Homes, Inc. v. Brooks, 832 So.2d 44 (Ala. 2001).

6

## II. COUNT III IS DUE TO BE DISMISSED AS FLEETWOOD WAS THE MANUFACTURER OF THE SUBJECT HOME.

Count III of the plaintiffs' Complaint purports to state a cause of action for negligent transportation and/or delivery.

This Count is due to be dismissed as to Fleetwood as it was only the manufacturer of the home. (See Complaint ¶ 3). As manufacturer, Fleetwood had no part in the delivery of the home to the plaintiffs' lot nor did it have any part in the setup of the subject home. (See Exhibit "A"). Because of this, Count III is due to be dismissed as to Fleetwood.

## III. THE REMAINING CLAIMS OF THE PLAINTIFFS ARE DUE TO BE COMPELLED TO BINDING ARBITRATION

The Federal Arbitration Act, 9. U.S.C. § 1, et seq. (hereinafter "FAA"), provides that a "written provision in...a contract evidencing a transaction involving [interstate] commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or...an agreement in writing to submit to arbitration an existing controversy arising out of such a contract...shall be valid, irrevocable, and enforceable..." 9 U.S.C. § 2. The United States Supreme Court has ruled in a case arising in Alabama that an agreement which contains a provision requiring arbitration of the disputes between parties which involves or affects interstate commerce is specifically enforceable under the FAA. Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 (1995).

The threshold question under Citizens Bank v. Alafabco, Inc., 123 S.Ct. 2037 (2003), as applicable to the present case, is whether the transaction in issue involved or affected interstate commerce. The Supreme Court in Terminix interpreted "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce". Terminix, 513 U.S. at 273-274. "Affecting commerce" are words of art that ordinarily signal the broadest permissible exercise of

Congress' Commerce Clause power. Id. The Citizens Bank Court, quoting Terminix, stated "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'- - that is, 'within the flow of interstate commerce." Citizens Bank, 123 S.Ct. 2040. Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if the economic activity in question would, in the aggregate, represent "a general practice...subject to federal control." Id. Thus, the applicable test is whether the transaction in issue "involved commerce" and therefore "trigger[ed] application of the FAA." Edward D. Jones & Co., LP v. Wehby, 2003 WL 22753436 (Ala. Nov. 21, 2003).

Fleetwood is a Georgia Corporation maintaining its principal place of business in Georgia. See Exhibit "A". The home in question was shipped via interstate commerce from the manufacturing plant in Georgia to the retailer's lot in Alabama and once sold it was delivered to the plaintiffs' lot. Id. The home was manufactured in Georgia with various materials imported across state lines via the state and federal highway systems. Id. These circumstances clearly establish a transaction that "involved commerce" to invoke the provisions of the FAA.

Since the parties' transaction involve commerce, the next question for resolution is whether the claims asserted in this case fall within the scope of the arbitration agreement executed by the Plaintiffs. In enacting Section 2 of the FAA, Congress declared a national policy favoring arbitration. Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987) (the arbitration act thus establishes a federal policy favoring arbitration requiring rigorous enforcement of agreements to arbitrate); Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) (as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or

8

a like defense to arbitrability).

In <u>Davis v. Southern Energy Homes, Inc.</u>, 305 F.3d 1268, 1270 (11th Cir. 2002), Southern Energy, the manufacturer of the manufactured home, filed a Motion to Compel Arbitration based upon the plaintiffs signing an arbitration provision contained within the home's written warranty. In the Complaint, the plaintiffs alleged breach of express warranty and violation of the Magnuson-Moss Warranty Act. <u>Id</u>. Davis argued that the Magnuson-Moss Warranty Act prohibited binding arbitration. <u>Id</u>. However, the Eleventh Circuit held that a written warranty claim arising under the Magnuson-Moss Warranty Act is subject to a valid binding arbitration agreement. <u>Id</u>. at 1280.

The Supreme Court of Alabama has held in a case with similar facts that a homeowner's acceptance of the benefits of a warranty containing an arbitration provision constitutes acceptance of arbitration provision itself. <u>Southern Energy Homes, Inc. v. Ard</u>, 772 So.2d 1131, 1134 (Ala. 2000). In <u>Ard</u>, the Court held that the Ards were contractually bound to the arbitration provision contained in the warranty for two reasons. <u>Id</u>. First, by affidavit, Southern Energy established that the Ards accepted the benefits of the warranty containing the arbitration provision. <u>Id</u>. Second, the Ards sued Southern Energy on the theory, among others, of express warranty. <u>Id</u>. The Court noted the only express warranty was the one containing the arbitration provision. <u>Id</u>. The Court stated further that "a plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions." <u>Id</u>. Furthermore, the Magnuson-Moss Act does not invalidate arbitration provisions in a written warranty. <u>Id</u>. at 1135. The facts in the case at bar are identical to those in <u>Ard</u>.

The plaintiffs' Complaint states causes of action for, *inter alia*, breach of warranty and violation of the Magnuson-Moss Warranty Act. (See Plaintiffs' Complaint). The Arbitration Agreement (Exhibit "1" attached to Exhibit "A") clearly encompasses all claims made by the plaintiffs, stating:

9

> "If your concerns are not satisfactorily remedied through the steps set out above, you are entitled to have your dispute settled through binding arbitration as set forth below.
>
> In the event of any dispute or claim, arising out of, or in connection with the design, construction, warranty or repair of any product or component supplied by the manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not "new," any representations, promises, undertakings or covenants made or allegedly made by the manufacturer in connection with or arising out of any transaction or undertaking between the manufacturer and any direct or subsequent purchaser, the manufacturer and the purchaser of this product agree to submit any such dispute or claim to binding arbitration pursuant to the provisions of 9 USC 1, et. seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing.
>
> If any provision of this agreement is found to be unenforceable, such provision shall be considered severed from the remaining provisions of this agreement and such remaining provisions shall remain in full force and effect.

(See Exhibit "1" attached to Exhibit "A").

Plaintiffs requested and received warranty repairs on numerous occasions. (See Exhibit "A"). The plaintiffs' Complaint states causes of action for, *inter alia*, breach of warranty. (See Plaintiffs' Complaint). Plaintiffs cannot reap the benefits of the warranty and, at the same time, repudiate its conditions.

Once the Court has determined that there is a valid arbitration agreement which should be enforced, the remedy to be fashioned is an Order compelling arbitration. See, e.g., Conticommodity Services, Inc. v. Philipp & Lion, 613 F.2d 1222 (2nd Cir. 1980); Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex), 767 F.2d 1140 (5th Cir. 1985). Coupled with the Order compelling arbitration, the Court may stay all proceedings, including discovery, in the case pending the conclusion

10

of the arbitration. See 9 U.S.C. § 3; Pearce v. E.F. Hutton Group, Inc., 828 F.2d 826, 830 (D.C. Cir. 1987) ("if arbitration is indicated by the contract, then a stay is required by the statute"). Alternatively, since all of the plaintiffs' claims are subject to arbitration, the Court can dismiss the complaint, without prejudice. See, e.g., Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161 (5th Cir. 1992).

**WHEREFORE, PREMISES CONSIDERED,** the defendant moves this Honorable Court to dismiss Counts III and IV of the Complaint and compel plaintiffs' claims in Counts I and II to binding arbitration, or in the alternative, to stay this proceeding and compel the plaintiffs to submit all their claims to binding arbitration, pursuant to the terms of the arbitration provision set forth in the written warranty.

/s/ David C. Hilyer
WINSTON W. EDWARDS (137576)
DAVID C. HILYER (293823)
Attorneys for Defendant
Fleetwood Homes of Georgia, Inc.

OF COUNSEL:

CRADDOCK RENEKER & DAVIS, LLP
4142 Carmichael Road, Suite C
Montgomery, AL 36106-2802
(334) 215-3064    Telephone
(334) 215-7843    Facsimile

## CERTIFICATE OF SERVICE

  I hereby certify that I have served a true and correct copy of the foregoing upon all counsel of record as <u>listed below</u> by placing same in the United States Mail, properly addressed and first class postage prepaid on this the 10th day of August, 2006.

            /s/ David C. Hilyer
            OF COUNSEL

David W. Rousseau, Esq.
211 W. Adams Street
Dothan, AL 36303

Warren Butler, Esq.
LYONS, PIPES & COOK, P.C.
P. O. Box 2727
Mobile, AL   36652-2727

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY and LUTHER THURMAN, * <br> * <br> Plaintiffs, * <br> * <br> v. * <br> * <br> TIMBERLINE HOMES, INC., and * <br> FLEETWOOD SPRINGHILL HOMES * <br> OF GEORGIA, et al. * <br> * <br> Defendants. * | CASE NO.:CV_____ |

## AFFIDAVIT OF TODD J. UHLICK

BEFORE ME, the undersigned authority, personally appeared Todd J. Uhlick, being by me first duly sworn, doth depose and say as follows:

"My name is Todd J. Uhlick. I am now, and, at all times relevant to this lawsuit have been, employed by Fleetwood Enterprises, Inc. as its Assistant General Counsel. Fleetwood Enterprises, Inc. is a Delaware corporation, with its principal place of business in Riverside, California. Fleetwood Enterprises, Inc. is the parent company of Fleetwood Homes of Georgia, Inc. I make this affidavit based upon my own personal knowledge, the facts of this case and the records of Fleetwood Enterprises, Inc. and Fleetwood Homes of Georgia, Inc.

Fleetwood Homes of Georgia, Inc. is a Georgia corporation with its principal place of business in Georgia. On or about July 7, 2004, the plaintiffs purchased a 2002 Fleetwood Anniversary manufactured home, serial number GAFL234AB75320-AV11. The home was manufactured by Fleetwood Homes of Georgia, Inc. on April 26, 2002. The home was manufactured as a "stock" unit which means it was not manufactured for a particular customer of a retailer.

With the purchase of the subject home, Fleetwood provided an express limited two-year written warranty. (See Exhibit "1"). Included in the warranty is an arbitration provision. Id. Plaintiffs requested and received warranty repairs on the following dates: May 20, 2002; June 24, 2002; October 29, 2002; November 19, 2002; August 25, 2003; September 22, 2003; November 8, 2003; December 22, 2003; May 1, 2004; May 27, 2004; October 12, 2004; November 22, 2004; February 15, 2005; April 4, 2005; August 24, 2005; October 7, 2005; and November 9, 2005.

Fleetwood did not have any part in the delivery of the home to the plaintiffs' lot nor did it have any part in the setup of the home at the plaintiffs' lot.

I am familiar with the products manufactured by Fleetwood Homes of Georgia, Inc. and its general business operations. Fleetwood Homes of Georgia, Inc. is a manufactured housing manufacturer. It manufactures homes at multiple manufacturing facilities in Georgia. The homes it manufactures, including the subject home, incorporate various component parts, including plumbing, electrical, aluminum products, steel products, appliances, wood products, fabrics, etc., which it acquires from suppliers outside of Georgia and from throughout the United States and are shipped to manufacturing plants in Georgia. The subject home was transported via federal and interstate highways from Fleetwood Homes of Georgia, Inc.'s manufacturing facility in Georgia to the retailer's sales location in Alabama and later to the plaintiff's lot.

The activities of Fleetwood Homes of Georgia, Inc. in the construction of the subject home are federally regulated by the provisions of the Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401. In August 1974, the National Manufactured Housing Construction and Safety Standards Act of 1974 (the MHCSS Act) was passed into law at 42 U.S.C. § 5401, et seq. Pursuant to the MHCSS Act, the Secretary of Housing and Urban

Development was required to establish federal manufactured home construction and safety standards, and to set forth rules governing the same. This home was built pursuant to those regulations."

Further affiant says not.

*Todd J. Uhlick*
Todd J. Uhlick
Assistant General Counsel
Fleetwood Enterprises, Inc.

STATE OF CALIFORNIA
COUNTY OF RIVERSIDE

Before me, the undersigned a Notary Public in and for State and County aforesaid, personally appeared Todd J. Uhlick, who is personally known to me and who, being by me first duly sworn doth depose and say that he signed the above affidavit and that it is true and correct to the best of his knowledge.

Done this the 10th day of AUGUST, 2006.

*Heather L. Kunetka*
NOTARY PUBLIC

(SEAL)

My Commission Expires: 1/26/09

HEATHER L. KUNETKA
COMM. #1547266
NOTARY PUBLIC - CALIFORNIA
RIVERSIDE COUNTY
My Comm. Expires January 26, 2009

# FLEETWOOD TWO YEAR LIMITED WARRANTY

**GENERAL COVERAGE**

Your new home, including the steel structure beneath the floor of the home, plumbing, heating, electrical systems, appliances, and all equipment installed by the Fleetwood Manufacturing Center, is warranted, under normal use, to be free from defects in materials and/or workmanship for two years.

This warranty begins on the date of the original retail delivery. Your warranty covers your home for two years from the original retail delivery. The warranty is transferable if you sell the home.

**COMMERCIAL COVERAGE**

If the home is used as a rental unit, commercial or office unit, the warranty begins on the first date of such use. If the home is used as a rental, commercial or office unit, your warranty coverage is ninety (90) days from the first date of such use. The two year warranty does not apply.

For rental, commercial or office use, this warranty applies only while the home is located at the original site.

**GENERAL REMARKS**

The Fleetwood Warranty covers only those defects which become evident within the applicable warranty period and where written notice is provided to the Retailer or the Fleetwood Service Center. This notice can not be received later than fifteen (15) days after the expiration of the warranty period.

All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts/components are covered only until this warranty expires. All parts/components replaced under the warranty are the property of Fleetwood. Fleetwood will make the final decision whether to repair or replace parts/components.

**FLEETGUARD EXTENDED SERVICE CONTRACT**

Many Fleetwood retailers offer FleetGuard, a 3-year extended service contract for Fleetwood Homeowners. FleetGuard covers the structure of your home, plus all the factory-installed systems originally supplied by Fleetwood - plumbing, electrical system, central heat, water heater, and the central air-conditioning system supplied by the retailer – as well as the factory installed appliances included in your home. If you ever need service during the contract period, a Fleetwood factory-trained technician will handle it.

Your Benefit: You call Fleetwood and we do the work. This means no estimates, no third party contractors, and no hassles.

For more information call toll free (877) 472-2042

If your home was purchased through a program sponsored by the Federal Emergency Management Act (FEMA), this warranty may not apply. Contact your Fleetwood Retailer, State Agency or Fleetwood Service Center for details.

4

# *THIS WARRANTY DOES NOT COVER:

- ▼ Defects or problems caused by or related to:

    A. Improper installation, leveling or re-leveling of the home or installation of skirting or other accessories provided by your Retailer. (Please refer to Retailer obligations on page 3 of this guide.)

    B. Problems resulting from settling of the home or shifting soil conditions (such as: glass/mirror cracking or breakage, door adjustments, drywall and ceiling cracks).

    C. Abuse, misuse, negligence or accidental damage, damage due to theft, vandalism, natural disasters or "Acts of God."

    D. Alteration or modification of the home.

    E. The use of a kerosene heater or other type of fuel-burning portable heater in the home.

    F. Normal deterioration due to wear or exposure. Please see page 15 for maintenance requirements.

    G. Problems resulting from using the home as a support structure for objects attached to it such as awnings, carports, garages etc.

    H. Problems resulting from moving and reinstalling the home.

    I. Problems caused by lack of maintenance.

    J. Problems resulting from condensation.

    K. The following items are considered part of homeowner maintenance and are not covered after the first year of the warranty period:

        - Carpet wear in high traffic areas
        - Caulking on the interior and exterior of the home
        - Minor drywall or ceiling cracks

- ▼ Problems resulting from failure to comply with instructions contained in the Homeowner's Guide and/or the Fleetwood Home Installation Manual.

- ▼ Appliances or accessories provided or installed by a Retailer or a third party.

*This list is illustrative only, not exhaustive.*



TWO YEAR LIMITED WARRANTY

**THIS WARRANTY DOES NOT COVER: (CONT.)**

▼ Damage to your home is not covered unless it is caused by the failure of an item covered by this warranty. The following items are not considered manufacturing defects in materials and/or workmanship and are not covered by this warranty.

   A. Broken, chipped or scratched glass or mirrors, or electrical cover plates.

   B. Scratches, dents, gouges or scuffs in vinyl floor coverings, walls, doors, cabinets, moldings, countertops, appliances, or plumbing fixtures, including toilet seats.

   C. Stains, cuts and/or tears in and on carpets, floor coverings, window treatments.

   D. Damaged or stained hardware (towel bar, door pulls, knobs, etc.), shower doors, exterior siding, trim or shutters.

   E. Torn or damaged window screens or shower curtains.

   F. Cracking or shrinking of fixture, tile or trim caulking.

   G. Broken, loose or missing trim.

Should any of the above items be present at the time of first occupancy, however, they will be repaired or replaced provided you give timely notice of the problem. Items present at first occupancy must be reported to your Retailer or Fleetwood Service Center **_within 45 days of retail delivery date_**. A checklist on page 33 has been provided for your use.

▼ Bedding, draperies, furniture, tires, wheels, axles or brakes.

▼ Any home registered or located outside the 50 United States.

▼ YOUR LOSS OF TIME OR INCONVENIENCE, COMMERCIAL LOSS, BEING DISPLACED OR UNABLE TO USE YOUR HOME, INCIDENTAL CHARGES SUCH AS TELEPHONE CALLS, HOTEL BILLS OR OTHER INCIDENTAL OR CONSEQUENTIAL DAMAGES. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

If your concerns are not satisfactorily remedied through the steps set out above, you are entitled to have your dispute settled through binding arbitration as set forth below.

In the event of any dispute or claim, arising out of, or in connection with the design, construction, warranty or repair of any product or component supplied by the manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not "new," any representations, promises, undertakings or covenants



TWO YEAR
LIMITED
WARRANTY

6

made or allegedly made by the manufacturer in connection with or arising out of any transaction or undertaking between the manufacturer and any direct or subsequent purchaser, the manufacturer and the purchaser of this product agree to submit any such dispute or claim to binding arbitration pursuant to the provisions of 9 USC 1, et. seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing.

If any provision of this agreement is found to be unenforceable, such provision shall be considered severed from the remaining provisions of this agreement and such remaining provisions shall remain in full force and effect.

THE REMEDIES PROVIDED IN THIS WARRANTY ARE THE SOLE REMEDIES PROVIDED BY FLEETWOOD.

ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THE ITEMS OR COMPONENTS COVERED BY THE EXPRESS WARRANTY IS LIMITED IN DURATION TO THE PERIOD OF THE EXPRESS WARRANTY. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU.

THIS WARRANTY GIVES YOU SPECIFIC LEGAL RIGHTS, AND YOU MAY ALSO HAVE OTHER RIGHTS WHICH MAY VARY FROM STATE TO STATE.

FLEETWOOD IS NOT RESPONSIBLE FOR ANY UNDERTAKING, REPRESENTATION OR WARRANTY MADE BY A RETAILER OR OTHER PERSON BEYOND THOSE EXPRESSLY SET FORTH IN THIS WARRANTY.



TWO YEAR LIMITED WARRANTY

7