## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**KIMBERLY and LUTHER**     *
**THURMAN,**
                             *

      **Plaintiffs,**

                             *       **CASE NO. 1:06 CV-709-DRB**

**v.**

                             *

**TIMBERLINE HOMES, INC.,**
**FLEETWOOD SPRINGHILL HOMES**     *
**OF GEORGIA,**

                             *

      **Defendants.**

## MOTION TO STAY AND COMPEL ARBITRATION

COMES NOW Defendant Timberline Homes, Inc. (hereinafter "Timberline"), by and through the undersigned counsel, and moves this Court to stay this action and compel arbitration. As grounds for this motion, Timberline shows unto the Court as follows:

### NARRATIVE SUMMARY OF UNDISPUTED FACTS

1.　　On or about June 7, 2003, Plaintiffs Kimberly and Luther Thurman, purchased a new 2002 Fleetwood Anniversary manufactured home, bearing Serial No. GAFL234A/B75320-AV11 from Timberline. (See Plaintiffs' Complaint, ¶ 6, attached as Exhibit "A;" Purchase Agreement, attached as Exhibit "B"). The home was manufactured by Fleetwood Springhill Homes of Georgia on April 26, 2002 . (Exhibit "A," ¶¶ 3 & 6).

2.　　Included in the sales documents relating to the purchase of this manufactured home is an "Agreement for Binding Arbitration," which states in pertinent part:

1.      Purchaser and Retailer acknowledge that the said Home is a product manufactured and sold in interstate commerce and that the provisions of Federal Arbitration Act are intended to be applicable to their transaction by agreement.

2.      Purchaser and Retailer agree, covenant, and consent that all claims, disputes and controversies between Purchaser and Retailer (and/or its agents or employees) arising out of or relating in any way to the sale (and the negotiations leading up to the sale), purchase, or occupancy of the Home or to any goods, fixtures, products (including insurance) offered or sold in connection with this transaction, or arising out of the financing of the Home, the design, construction, performance, delivery, condition, installation, set-up, financing, repair or servicing of the Home, or claims for equitable relief or claims based on statute, contract, warranty, (or any alleged breach thereof), tort, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement or deceit, will to the fullest extent permitted by Federal law be resolved by binding arbitration.

• • •

8.      PURCHASER AND RETAILER UNDERSTAND THAT BY ENTERING INTO THIS AGREEMENT EACH WAIVES ANY RIGHT TO A TRIAL BY JURY OR A TRIAL IN COURT AS TO ANY CLAIM, DISPUTE, OR CONTROVERSY BETWEEN THEM.

• • •

(Sales Arbitration Provision attached hereto as Exhibit "C").

3.      The Arbitration Provision is initialed and signed by Plaintiff, and it is dated.  As such, there can be no question that she was aware of the Arbitration Provision and its contents, and that she willingly and knowingly agreed to their terms.  The law is settled in Alabama that a party to a contract may not avoid the contract by claiming ignorance of the terms.  *Ex Parte Stripling*, 694 So.2d 1281 (Ala. 1997); *Locklear Dodge City, Inc. v. Kimbrell*, 703 So.2d 303 (Ala. 1997); *Power Equipment v. First Alabama Bank*, 585 So.2d 1291 (Ala. 1991).

4.      Plaintiff also signed a Supplement to the Purchase Agreement itself, whereby she admits

2

to reading the following provision:

Arbitration Agreement

Part of your closing package will include a binding document.  By signing this document, you agree that any controversy or claim arising out of, or in any way relating to the sale of the manufactured home and the negotiations leading up to the sale, breach of contract, or other cause of action, will be settled solely by arbitration and not by court action. The arbitration agreement provides that you waive your right to trial by jury.  Arbitration will be the sole process for the settlement of any and all disputes, claims or controversies between you and Timberline, related to the sale of your manufactured home.

(Supplement to Purchase Agreement, attached as Exhibit "D")

## **MOTION TO STAY AND COMPEL ARBITRATION**

### **I.        The transaction involves interstate commerce.**

In order to compel arbitration, it must first be decided whether the transaction in question involves interstate commerce so as to render the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* applicable. It is respectfully submitted that the FAA applies to the transaction described in this motion.  The FAA, § 2 provides, in pertinent part, that a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  The Supreme Court of the United States has held that "the word [']involving['] is broad and is indeed the functional equivalent of [']affecting[']"  *Allied-Bruce Terminix Cos. , v. Dobson*, 513 U.S. 265 (1995).

The FAA is applicable in this case.   Upon information and belief, this manufactured home was

substantially manufactured from equipment and parts sold across state lines into Alabama.[1]  The FAA

applies in a case involving a construction contract if materials manufactured outside the state are

substantially used in the construction.  *F.A. Dobbs & Sons, Inc. v. Northcutt*, 819 So. 2d 607 (Ala.

2001).

The manufactured home industry is heavily regulated by the Congress of the United States.  In

August 1974, President Ford signed into law the MHCSS Act.  42 U.S.C. §§ 5401, *et seq*.  The MHCSS

Act required the Secretary of the Department of Housing and Urban Development to establish Federal

manufactured home construction and safety standards and to issue regulations to carry out the purpose of

the MHCSS Act.  The standards promulgated pursuant to the MHCSS Act appear in the Code of Federal

Regulations, Title 24, Federal Manufactured Home Construction and Safety Standards.  24 CFR § 3280.

The regulations promulgated pursuant to the MHCSS Act appear in the Code of Federal Regulations, Title

24, Manufactured Home Procedural and Enforcement Regulations.  24 CFR § 3282.  The financing of

manufactured homes is also heavily regulated by the Congress of the United States.  <u>See</u> the Truth-in-

Lending Act, 15 U.S.C. §1601 *et seq.*; <u>See also</u> Federal Reserve Board Regulation Z, 12 C.F.R. Part

226, *et seq*.  Congress's power to regulate the manufactured home industry is derived from its inherent

power to regulate interstate commerce.

In the case *sub judice,* we are dealing with a manufactured home built in accordance with the

---

[1]Timberline adopts the narrative summary of undisputed facts set forth in Co-Defendant
Fleetwood Homes of Georgia, Inc. ("Fleetwood") as if fully set forth herein, and further relies upon the
Affidavit of Todd Uhlick attached as Exhibit "A" to Fleetwood's Motion to Dismiss, or in the
alternative, Motion to Compel Binding Arbitration and Motion to Stay (Doc 1)  in support of this
argument.

MHCSS Act and the standards and regulations promulgated pursuant to the MHCSS Act. Since the MHCSS Act controls the building of manufactured homes, rather than state or local codes, it is respectfully submitted that the FAA applies and that this matter is due to be arbitrated.

##    II.    The arbitration provision is valid and enforceable.

Arbitration clauses in warranties are enforceable and do not violate the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act 15 U.S.C. § 2301, *et seq.* (the "Magnuson-Moss Warranty Act"). The Supreme Court of Alabama's ruling in *Southern Energy Homes, Inc. v. Ard,* 772 So.2d 1131 (Ala. 2000) established that the Magnuson-Moss Warranty Act does not preclude the use of binding arbitration provisions in warranties. The Supreme Court of Alabama has steadfastly followed the *Ard* holding. See *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So.2d 777, 785 (Ala. 2000); *Southern Energy Homes, Inc. v. Davis,* 776 So.2d 770, 771 (Ala. 2000); *Southern Energy Homes, Inc. v. Gregor,* 777 So.2d 79 (Ala. 2000); *Southern Energy Homes, Inc. v. McCray*, 788 So.2d 882 (Ala. 2000); *Fleetwood Enterprises, Inc. v. Bruno*, 784 So.2d 277, 280 (Ala. 2000).

The Eleventh Circuit and courts around the country have likewise found arbitration provisions in warranties to be valid and enforceable. See *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002) (abrogating *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423 (M.D. Ala. 1997)*; In Re American Homestar of Lancaster, Inc.*, 50 S.W.3d 480 (Tex. 2001); *Results Oriented, Inc. v. Crawford,* 538 S.E.2d 73 (Ga.App. 2000); *Michelle Nicole Vice, et al. v. Classic Homes of Gautier, Inc.,* Case No. 1:99CV432RG, U.S. Dist. Court for the Southern District of Mississippi, Southern Division; *Horace Dean Glisson v. Homes of Legend, Inc., et al.,* Case No. CV00-JEO-0479-J, U.S. Dist. Court for the Northern District of Alabama, Jasper Division; *James R. Collins v. Fleetwood Homes,*

*Inc., et al.* U.S. Dist. Court for the Northern District of Alabama, Middle Division, Case No 00-PWG-0521-M); but see *Cunningham v. Fleetwood Homes of Georgia, Inc.*, 253 F.3d 611 (11th Cir. 2001) (in denying Fleetwood's motion to compel based on a third party beneficiary status, followed the rulings in *Boyd v. Homes of Legend,* 981 F. Supp. 1423, 1434-41 (M.D. Ala. 1997) and *Wilson v. Waverlee Homes, Inc.*, 954 F. Supp. 1530, 1537-39 (M.D. Ala. 1997) but specifically did "not decide whether Magnuson-Moss makes arbitration agreements unenforceable as to all Magnuson-Moss claims . . . [or] whether warrantors may include binding arbitration provisions in the warranty itself").

In *Ard,* the manufacturer of the manufactured home was allowed to compel arbitration even though its warranty was unsigned.  In this case, Plaintiff signed the Arbitration Agreement and acknowledged receipt of a copy of the agreement with its terms, conditions and limitations.  (Exhibits "C" and "D").  There is clear evidence of acceptance of the terms of the Arbitration provision.  See *Southern Energy Homes, Inc. v. Ard,* 772 So.2d at 1134.

WHEREFORE, PREMISES CONSIDERED Timberline moves that an order be entered requiring the submission of this case to arbitration and for such other and further relief as this Honorable Court deems just.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted as, among other things, one or more documents relevant in this matter require that disputes for which a claim is made in the Complaint are to be submitted to arbitration.

### SECOND DEFENSE

6

Your pleader denies it proximately caused the damages complained of in the Complaint.

## THIRD DEFENSE

A manufactured home is not a "consumer product" as defined in the Magnuson-Moss Warranty

- Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act")

as a manufactured home is a dwelling.  Under 16 C.F.R. § 700.1(e), it is stated that:

> [n]umerous products which go into the construction of a consumer dwelling are all
> consumer products when sold "over the counter," as by hardware and building supply
> retailers . . .  However, where such products are at the time of sale integrated into the
> structure of a *dwelling* they are not consumer products as they cannot be practically
> distinguished from realty. (Emphasis added).

## FOURTH DEFENSE

Even if the Magnuson-Moss Act is applicable, there has been a failure to comply with the

conditions precedent to recovery under the Magnuson-Moss Act.

## FIFTH DEFENSE

The statute of frauds is hereby plead.

## SIXTH DEFENSE

There has not been a mitigation of the alleged damages.

## SEVENTH DEFENSE

Any warranty obligations owed are controlled and strictly limited by the expressed terms of its

warranty, including all limitations and exclusions set out in its warranty.

## EIGHTH DEFENSE

Conditions precedent relative to the right to maintain this action have not been met.

## NINTH DEFENSE

7

Your pleader has not been afforded a reasonable amount of time to cure alleged defects in the manufactured home and, thus, any breach of warranty claim or any Magnuson-Moss Act claim (if applicable) is barred.

## TENTH DEFENSE

Any alleged damage to the manufactured home was caused by an independent intervening cause after the manufacture and/or delivery of the home.

## ELEVENTH DEFENSE

It is denied that there was any alleged reliance upon any alleged representation made and that any such reliance was reasonable.

## TWELFTH DEFENSE

This Defendant was the retailer of the manufactured home, not the manufacturer of the manufactured home.

## THIRTEENTH DEFENSE

Punitive damages are not recoverable based upon the averments in the Complaint.

## FOURTEENTH DEFENSE

The invitation for a trier of fact to impose liability for punitive damages, without guidelines or standards for determination of the amount or proper circumstances for such an award, would deny due process of law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Constitution of the State of Alabama.

## FIFTEENTH DEFENSE

The claims alleged for punitive damages are barred by the Fourteenth Amendment to the United States Constitution and by the Constitution of the State of Alabama.

## SIXTEENTH DEFENSE

The imposition of punitive damages in this case would contravene the due process clause of the United States Constitution and the Constitution of the State of Alabama and the Fourth, Sixth, Eighth, and Fourteenth Amendments, separately, to the United States Constitution on each of the following grounds:

A.    The procedures pursuant to which punitive damages are awarded permit the award of punitive damages upon satisfaction of a standard of proof less than the applicable standard of proof required for the imposition of criminal sanctions.

B.    The procedures pursuant to which punitive damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrong doing.

C.    The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of award.

D.    The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the award of punitive damages.

E.    The procedures pursuant to which punitive damages are awarded are unconstitutionally vague.

F.    The procedures pursuant to which punitive damages are awarded fail to provide a means for awarding separate judgments against alleged joint tortfeasors.

G.    The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of punitive damages.

H.    The procedures pursuant to which punitive damages are awarded fail to provide a clear appellate standard of review of an award of punitive damages.

I.    The procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceedings during

which liability and compensatory damages are determined.

J.    An award of punitive damages would constitute an arbitrary and capricious taking of property without due process of law.

### SEVENTEENTH DEFENSE

Imposition of punitive damages would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

### EIGHTEENTH DEFENSE

All defenses, criteria, limitations, and standards mandated by the Supreme Court of the United States in the case styled *BMW of North America, Inc., v. Gore*, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1997) are hereby adopted.

### NINETEENTH DEFENSE

Any statutory cap on damages enacted at present or subsequent to the filing of this pleading is hereby adopted and asserted.

### TWENTIETH DEFENSE

Any and all claims for punitive damages in this action are limited in amount by the application of § 6-11-21, *Alabama Code (1975)*, which provides that an award of punitive damages shall not exceed $250,000.00.

### TWENTY-FIRST DEFENSE

The holding of *Henderson v. Alabama Power Co.,* 627 So.2d 878 (Ala. 1993) is due to be overruled for each and every reason set forth in the special concurrences in *Goodyear Tire & Rubber Co.*

*v. Vinson*, 749 So.2d 393 (Ala. 1999), and supporting authorities therein, which are adopted by reference as if fully set out herein.

### TWENTY-SECOND DEFENSE

The doctrine of revival dictates that upon the overruling of *Henderson v. Alabama Power Co.*, 627 So.2d 878 (Ala. 1993), the $250,000.00 cap provided by §6-11-21, *Alabama Code (1975)*, is applicable to this case which was filed after §6-11-21 was enacted.

### TWENTY-THIRD DEFENSE

The Complaint is filed in the improper venue and/or there is a more convenient forum for the parties to this action.

### TWENTY-FOURTH DEFENSE

All or some of the claims made in the Complaint are preempted by federal law.

### TWENTY-FIFTH DEFENSE

The Court lacks jurisdiction this defendant.

### TWENTY-SIXTH DEFENSE

The time within which the claims alleged in the Complaint could have brought has expired and therefore the claims made in the Complaint for punitive damages or other damages are barred by the Statute of Limitations.

### TWENTY-SEVENTH DEFENSE

Potential liability for mental anguish damages should be restricted to conduct which is bound to result in shame, humiliation, and mental anguish, but not mere disappointment, anger, worry, aggravation, resentment, or embarrassment, and in the absence of emotional distress so severe that no reasonable

11

person could be expected to endure it and substantial evidence a defendant was aware of circumstances that would make alleged intentional or negligent conduct result in shame, humiliation, and mental anguish, claims for mental anguish should not be allowed to be submitted to the jury.  No emotional injury recovery is available in this case as Alabama follows the "zone of danger" test, which limits recovery of mental anguish damages to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct.  *See Grand Manor, Inc. v. Dykes*, 2000 WL 337528 (Ala. March 31, 2000); *Wal-Mart Stores, Inc. v. Bowers*, 752 So.2d 1201 (Ala. 1999.); *AALAR, Ltd., Inc. v. Francis*, 716 So.2d 1141, 1147 (Ala. 1998); a*ccord, White Consol. Indus., Inc. v. Wilkerson*, 737 So.2d 447, 449 (Ala. 1999).

## TWENTY-EIGHTH DEFENSE

Mental anguish damages are not available in this case as the terms the warranty expressly preclude responsibility for incidental or consequential damages or expenses.

## TWENTY-NINTH DEFENSE

Mental anguish damages are not recoverable under the Magnuson-Moss Warranty Act.

## THIRTIETH DEFENSE

The invitation for a trier of fact to impose liability for mental anguish damages, without guidelines or standards for determination of the amount or proper circumstances for such an award, would deny due process of law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Constitution of the State of Alabama.

## THIRTY-FIRST DEFENSE

The claims relating to mental anguish damages are barred by the Fourteenth Amendment to the United States Constitution and by the Constitution of the State of Alabama

## THIRTY-SECOND DEFENSE

The imposition of mental anguish damages in this case would contravene the due process clause of the United States Constitution and the Constitution of the State of Alabama and the Fourth, Sixth, Eighth, and Fourteenth Amendments, separately, to the United States Constitution on each of the following grounds:

A.    The procedures pursuant to which mental anguish damages are awarded permit the award of mental anguish damages upon satisfaction of a standard of proof less than the applicable standard of proof required for the imposition of criminal sanctions.

B.    The procedures pursuant to which mental anguish damages are awarded may result in the award of joint and several judgments against multiple defendants for different alleged acts of wrong doing.

C.    The procedures pursuant to which mental anguish damages are awarded fail to provide a reasonable limit on the amount of award.

D.    The procedures pursuant to which mental anguish damages are awarded fail to provide specific standards for the award of mental anguish damages.

E.    The procedures pursuant to which mental anguish damages are awarded are unconstitutionally vague.

F.    The procedures pursuant to which mental anguish damages are awarded fail to provide a means for awarding separate judgments against alleged joint tortfeasors.

G.    The procedures pursuant to which mental anguish damages are awarded fail to provide specific standards for the amount of mental anguish damages.

H.     The procedures pursuant to which mental anguish damages are awarded fail to provide a clear appellate standard of review of an award of mental anguish damages.

I.     The procedures pursuant to which mental anguish damages are awarded may permit the admission of evidence relative to mental anguish damages in the same proceedings during which liability and compensatory damages are determined.

J.     An award of mental anguish damages would constitute an arbitrary and capricious taking of property without due process of law.

### THIRTY-THIRD DEFENSE

Imposition of mental anguish damages would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

### THIRTY-FOURTH DEFENSE

All affirmative defenses as itemized in Rule 8 of the Alabama Rules of Civil Procedure or that may otherwise be applicable are hereby incorporated as if fully set forth herein.  In the event of further investigation or discovery reveals the applicability of any such defenses or other defenses, the right to plead such affirmative defenses as may be appropriate in this case is hereby reserved.  Such defenses are herein incorporated by reference for the specific purpose of not waiving any such defense.

s/M. WARREN BUTLER
s/M. WARREN BUTLER        BUT021
Attorneys for Defendants
Lyons, Pipes & Cook, P.C.
P. O. Box 2727
Mobile, AL   36652
Phone: (251) 441-8229
Fax: (251) 433-1820

14

E-mail:   MWB@lpclaw.com


Of Counsel:

Lyons, Pipes & Cook, P.C.
P. O. Box 2727
Mobile, AL   36652
(251) 441-8237

CERTIFICATE OF SERVICE

I do hereby certify that I have on this 11th day of August, 2006, I electronically filed the foregoing with the Clerk of the Court and I hereby served by United States Postal Service or electronically the foregoing document:

David W. Rousseau, Esq.
211 W. Adams Street
Dothan, AL   36303

David C. Hilyer, Esq.
Craddock Reneker & Davis, LLP
4142 Carmichael Road, Suite C
Montgomery, AL   36106-2802

S/M. WARREN BUTLER
M. WARREN BUTLER

16

FILED

## IN THE CIRCUIT COURT OF HOUSTON COUNTY, ALABAMA

KIMBERLY and LUTHER THURMAN,  )
                                 )
      Plaintiffs,            )
                                 )
vs.                             )   CV-2006- 4045
                                 )
TIMBERLINE HOMES, INC., and    )
FLEETWOOD SPRINGHILL HOMES   )
OF GEORGIA,                    )
                                 )
      Defendants.          )

JUL 05 2006

____ D. CLERK
____ CO., AL

## COMPLAINT

1. The Plaintiffs are resident citizens of Houston County, Alabama.

2. The Defendant Timberline Homes Inc., [hereinafter "Timberline"] is an Alabama Corporation which at that time was selling mobile homes in Houston County, Alabama.

3. The Defendant Fleetwood Springhill Homes of Georgia, by information and belief, is a Georgia Corporation which manufactured mobile homes which were placed in Houston County, Alabama.

## COUNT ONE

5. Plaintiffs incorporate by reference all of the preceding paragraphs into this count as if they were set out herein in their entirety.

6. On or about July 7, 2004, Timberline, acting as agent for Fleetwood Springhill Homes of Georgia, sold Plaintiffs a new 2002 mobile home manufactured by Fleetwood Springhill Homes and identifiable by serial number GA FL 234 A 75320-AV11 and GA FL 234 B 75320-AV11.

7. Defendants Timberline and Fleetwood Springhill Homes of Georgia made written and oral express warranties to the Plaintiffs and represented that the mobile home would be free from all defects in materials and workmanship and that it would be set up in a good, workmanlike manner and in accordance with standards imposed by the manufacturer and applicable state and federal law. Defendants further warranted that any defects in materials or workmanship in the home of which they were given

PDF created with pdfFactory trial version www.pdffactory.com

notice within the warranty period would be repaired or remedied at no cost to Plaintiffs.

8.  Immediately after delivery of the mobile home the Plaintiffs discovered numerous defects which were not reasonably capable of discovery prior to the delivery and set up of the said home on the mobile home's exterior, including:

The sliding glass door leaks underneath the doorframe which has caused damage to the doorframe and the molding to warp; the water pipes rattle and hammer when water is running; there are wall sockets with bare wires showing; the Defendants fixed nails coming out of flooring by cutting a hole in the flooring and covering it with colored putty; soft spots in the flooring were fixed by the Defendant by driving wedges up underneath the flooring; the flooring squeaks with movement, the drain pipe vents have been fixed numerous times by the Defendants; the drawer brackets were broken and Defendant sent the brackets in the mail for Plaintiffs to fix; two windows have been replaced and other windows were adjusted but some windows are still hard to open; Plaintiffs do not know the extent of the damage underneath the doorframe and flooring but Plaintiffs can smell mildew from the moisture leaking through the doorway; Defendants have replaced auto vent on the sewer drain line four or five times; Defendants also put the washing machine on the main sewer line

9.  Plaintiffs notified the manufacturer in a timely fashion through the dealer as required by the express warranty in pursuant to Alabama Code § 7-2-306(3)(1975), of the breach of the warranty claim prior to bringing this suit.

10.  Plaintiffs have made the mobile home available to the manufacturer and the dealers' representatives for repair or replacement.

11.  The manufacture and the dealer were obligated to provide service under the warranty issue, yet they refused or failed to do so; and the mobile home is still in the defective condition.

12.  The mobile home continues to contain defects which substantially impaired the value of the mobile home to the Plaintiffs and these defects could not reasonably be discovered by the Plaintiffs prior to the Plaintiffs acceptance of the mobile home.

13.  The Plaintiffs have suffered mental anguish because the mobile home is their primary residence and they do not have the peaceful enjoyment of their home.

14.  The Plaintiffs claim compensatory damages for breach of warranty and the intended decrease in the value of their home due to the failure to make repairs called for under their warranty.  In addition, the Plaintiffs claim consequential damages for their emotional distress and other incidental damages.

Wherefore, Plaintiffs demand judgment against the defendants in the sum of $50,000.00 plus interest and costs.

PDF created with pdfFactory trial version www.pdffactory.com

## COUNT TWO

15. Plaintiffs re-allege paragraphs 1-14 of the complaint as if set out here in full.

16. This count is brought pursuant to the Magnuson Moss Warranty Federal Trade Commission Improvement Act 15 U.S.C. § 2301-2312.

17. Defendant Fleetwood Springhill Homes of Georgia warranted to repair defects and implied that said mobile home was free from certain defects and was fit for its ordinary and particular uses and that it would repair said defects in a certain time frame should they arise.

18. That said mobile home was not free from defects covered by the warranty.

19. The Defendant was notified of the defects and were given numerous opportunities to cure the defects.

20. The Defendant has failed, refused or otherwise been unable to cure the defects.

21. As a proximate result of failure to cure such defects, Plaintiffs were injured and damaged.

Wherefore, Plaintiffs demand judgment against the Defendant Fleetwood Springhill Homes of Georgia and requests that a jury award Plaintiffs a reasonable amount to compensate Plaintiffs for their damages, costs, interest and an attorney's fee in accord with the statute.

## COUNT THREE

22. Plaintiffs re-allege paragraphs 1-21 of the complaint as if they were set out in full herein.

23. The Defendant Timberline Homes, Inc. or Defendant Fleetwood Springhill Homes of Georgia were obligated to deliver and properly set up the mobile so that the mobile home was not damaged.

24. The Defendants, Timberline and Fleetwood Springhill Homes of Georgia, were negligent in transporting and/or setting up the mobile home which proximately resulted in damage to the mobile home.

Wherefore, the Plaintiffs demand compensatory damages against the Defendant Timberline and Fleetwood Springhill Homes of Georgia for whatever damages a jury might award.

## COUNT FOUR

25. Plaintiffs re-allege paragraphs 1-24 of the complaint as if they were set out

PDF created with pdfFactory trial version www.pdffactory.com

in ful. herein.

26.  Defendants expressly and impliedly warranted the mobile home and agreed to repair defects in the mobile home during a stated period of time.

27.  Plaintiffs informed the Defendants of the defects in the mobile home.

28.  Defendants breached the warranty by failing to repair or cure the mobile homes defects.

29.  As a proximate result of the failure to cure defects. Plaintiffs were injured and damaged.

WHEREFORE, Plaintiffs demand judgment against the defendants in the sum of $50,000.00 plus interest and court costs.

David W. Rousseau (ROU007)
Attorney for Plaintiffs
211 W. Adams Street
Dothan, AL 36303
(334) 699-9000

Jury Demand

Plaintiffs demand trial by a struck jury.

David W. Rousseau

Address for service:

Fleetwood Homes of Georgia, Inc,
c/o CT Corporation System
1201 Peachtree Street NE
Atlanta, GA 30361

Timberline Homes, Inc,
c/o Michael K. Morris
1251 South Blvd.
Brewton, AL 36426

PDF created with pdfFactory trial version www.pdffactory.com

# Timberline Homes, Inc.
5449 MONTGOMERY HIGHWAY
Dothan, AL 36301
334-983-7990  fax 334-983-7992
"Purchase Agreement-Form 500"

In this Contract the words I, Me, and My refer to the Buyer and Co-Buyer Signing this Contract. The words You and Your refer to the Dealer/Retailer. Subject to the terms on both pages of this agreement, you agree to sell and I agree to purchase the following described unit.

| | | |
|---|---|---|
| Buyer(s):mi KIMBERLY THURMAN | Phone 334-793-6812 | date 6/7/03 |
| Address 281 KNOWLES ROAD WEBB ALABAMA  36376 | Salesperson CHERYL MCLEOD | |
| Delivery Address SAME | | |

| Make & Model | Year | BdRooms | L Floor | L Hitch W | Stock or Special |
|---|---|---|---|---|---|
| FLEETWOOD ANNIVERSARY | 2002 | L 8 | 76  32 | 80  32 | STOCK |
| Serial Number GAFL234AB75320-AV11 | New or Used NEW | Color CLAY | Proposed Delivery Date | Stock Number |

| LOCATION | R-VALUE | THICKNESS | TYPE OF INSULATION | BASE PRICE OF UNIT | $ 83,167.80 |
|---|---|---|---|---|---|
| CEILING | 28 | 7 1/2 | FIBER | (Tires/Axles Credit) | 800.00 |
| EXTERIOR | 11 | 3 1/2 | FIBER | Total Land Cost | |
| FLOORS | 11 | 3 1/2 | FIBER | Cost of Improvements | $ |
| | | | | SUB-TOTAL | $ 82,367.80 |

This insulation information was furnished by the manufacturer and is disclosed in compliance with the Federal Trade Commission Rule 16CRF, Section 460.16

| OPTIONAL EQUIPMENT, LABOR AND ACCESSORIES | | Sales Tax | 1,302.20 |
|---|---|---|---|
| | | Title Fees | 30.00 |
| SET UP | | Other Tax | |
| DELIVERY | | Total Taxes and Fees | 1,332.20 |
| SKIRTING | | POINTS | |
| 2 DECKS | | 1. CASH PURCHASE PRICE | $ 83,700.00 |
| AC | | | |

| | | |
|---|---|---|
| TRADE-IN ALLOWANCE | $ | 30,279.39 |
| LESS BAL DUE ON ABOVE | $ | 30,279.39 |
| NET ALLOWANCE | $ | 0.00 |
| CASH DOWN PAYMENT | $ | 53,420.61 |
| CASH AS AGREED SEE REMARKS | $ | 30,279.39 |
| SUB-TOTAL | $ | |
| PREPAID FINANCE CREDIT | $ | |
| 3. UNPAID BALANCE OF CASH SALE PRICE | $ | 0.00 |

PAID BY CLOSING AGENT TO CONSECO

Balance Carried to Optional Equipment   $

NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON PAGE 2 OF THIS AGREEMENT

| Description of Trade-In | Year 1998 | Size 16X60 |
|---|---|---|
| Make CAVALIER | Model | Bedrooms 4X2 |
| Serial # 84886 | | Color |
| Amount Owing to whom: | | |
| Any Debt I owe on the Trade-In is to be paid by: | You | Me |

You and I certify that the additional terms and conditions printed on page 2 of this contract are agreed to as a part of this agreement, the same as if printed above the signatures. I am purchasing the described manufactured home or vehicle; the optional equipment and accessories, the insurance as described have been voluntary; that my trade-in is free from all claims whatsoever, except as noted.

This agreement contains the entire understanding between you and me and no other representation or inducement verbal, or written, has been made which is not contained in this contract. I, or We, acknowledge receipt of this order and that I, or We, have read and understand Page 2 of this agreement.

Not Valid unless accepted and signed by an Officer of the Company or Authorized Agent.

SIGNED X _____ Buyer

APPROVED
Timberline Homes, Inc. ---- Retailer

SOCIAL SECURITY NO. 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

BY _____

SIGNED X _____ Buyer

SOCIAL SECURITY NO _____

See Page 2 Additional Terms and Conditions

Page 1 of 2

THI Feb 2003

STATE OF ALABAMA,

_Houston_____ COUNTY.

## AGREEMENT FOR BINDING ARBITRATION
This agreement for binding arbitration is this date entered between
_Kimberly D Thurman_____, hereinafter called
"Purchaser" and Timberline Homes, Inc., hereinafter called "Retailer".

Purchaser has this date purchased from Retailer a manufactured home ("Home") described as
follows: Make: _Fleetwood_____ _____ Model: _ANNIVERSARY___;
Serial Number: _GAFL234AB75220-AU11_____.

As part of the consideration for the sale of said Home, Purchaser and Retailer, for themselves,
their successors and assigns, hereby enter into this agreement for binding arbitration, each
intending to be mutually bound by the terms of this agreement.

1. Purchaser and Retailer acknowledge that the said Home is a product manufactured and sold in
interstate commerce and that the provisions of Federal Arbitration Act are intended to be
applicable to their transaction by agreement.

2. Purchaser and Retailer agree, covenant, and consent that all claims, disputes and controversies
between Purchaser and Retailer (and/or its agents or employees) arising out of or relating in any
way to the sale (and the negotiations leading up to the sale), purchase, or occupancy of the Home
or to any goods, fixtures, products (including insurance) offered or sold in connection with this
transaction, or arising out of the financing of the Home, the design, construction, performance,
delivery, condition, installation, set-up, financing, repair or servicing of the Home, or claims for
equitable relief or claims based on statute, contract, warranty, (or any alleged breach thereof),
tort, negligence, wantonness, fraud, misrepresentation, suppression of fact, or inducement or
deceit, will to the fullest extent permitted by Federal law be resolved by binding arbitration.

3. Arbitration of such claims will be conducted by a single arbitrator who is to be selected by the
Retailer with the consent of the Purchaser. In the event the Retailer and Purchaser cannot agree
on the arbitrator, the presiding judge of the Circuit Court of the county where the sale of the
Home was made shall pick the arbitrator. Purchaser and Retailer agree that any and all
arbitration proceedings which may take place shall be in the county in which the sale of the
Home was made. The parties further agree and understand that the arbitrator selected shall have
all powers provided by law. These powers shall include the full authority to adjudicate all legal
and equitable remedies, including but not limited to, the awarding of money damages; providing
declaratory relief and injunctive relief; and the taxing of fees, expenses and costs of arbitration.
Judgment on any award rendered by the arbitrator may be entered in and enforced by any Court
of competent jurisdiction.

Page 1of 2

_KDT_
Initials    _____    _____
Initials    Initials

(Continued on Page 2)

THI Feb 2003

4. In the event either Purchaser or Retailer initiates arbitration proceedings pursuant to this agreement, Retailer will be responsible for paying or advancing the initial filing fee; however, it is strictly understood and agreed between Purchaser and Retailer that the arbitrator hearing the claim or claims shall have the power and authority to assess and tax all costs, fees, and expenses against either or both parties as the circumstances of the case may dictate and influence his discretion.

5. The Retailer and Purchaser further agree that in the event any provision of this Agreement is held or determined to be in conflict with a mandatory provision of applicable law, the conflicting or unlawful provision shall be severed from the agreement by the arbitrator and the remainder of the agreement shall be enforced.

6. Any challenges to the validity or enforceability of this Agreement shall be determined by the arbitrator. Any and all issues and disputes as to be arbitrability of any claim must also be resolved by the arbitrator.

7. Purchaser and Retailer understand that they have a right or opportunity to litigate disputes through a court, but they prefer to resolve their disputes through arbitration. This Agreement documents their election to resolve any claims, disputes, and controversies by arbitration rather than the judicial process.

**8. Purchaser and Retailer understand that by entering into this agreement each waives any right to a trial in court as to any claim, dispute, or controversy between them.**

Dated: _6-7-03_____.

RETAILER:
Timberline Homes, Inc.

BY: _____

PURCHASER:

_____

_____

_____

(page 2 of 2)

# SUPPLEMENT TO PURCHASE AGREEMENT

Timberline will honor every item listed on the Purchase Agreement – Form 500
no more,   no less!

_hDT_      _____      _____
Initials          Initials          Initials

First of all, look at the manufactured home you are purchasing.

As to the construction of the home the manufacturer of the home provides the warranty.

_hDT_      _____      _____
Initials          Initials          Initials

For new home purchases, your Timberline retailer will provide to you a "homeowners guide
and/or warranty document", which will list details as to:

       What is covered under your warranty;
       The length of your warranty; and
       How to report and request warranty service.

For example, furniture, bedding, draperies, that may be a part of your purchase.....**have no
warranty;**
.....appliances and heating/air conditioning equipment listed as warranty items are covered by the
warranty of the manufacturer of the particular product (e.g. General Electric, Whirlpool, Maytag,
Coleman, or others).

.... skirting, steps, decks, land clearing, site preparation, and such items that may be on the
"Purchase Agreement" or financed as part of your home purchase package, **are not warranted
by Timberline**.... if any warranty or guarantee should exist, it would be from the vendor or
manufacturer of the specific product or service.  Your "homeowners guide/warranty document"
will identify what items that may be covered by warranty and how to contact vendors of
authorized warranty service on these products.

It is most important that you read the "homeowners guide and warranty packet" and have a clear
understanding of the covered items, the terms and conditions of the warranty.... and the
procedures to follow in requesting warranty repairs.  The guide will also outline the buyer's
responsibilities and guidelines for the proper care of your home.

_hDT_      _____      _____
Initials          Initials          Initials

**Pre-owned homes typically have no warranty, they are "sold as is".** If the pre-owned home should have any warranty, it will be detailed in the "homeowners guide and warranty packet". If there are new appliances or heating/air conditioning equipment that have a warranty, the warranty terms and conditions, if any, on these items would be detailed in the warranty booklet with the product.  **Again, the retailer provides no warranty**

| hDT | _____ | _____ |
|:---:|:---:|:---:|
| Initials | Initials | Initials |

You may decide to purchase an **"extended warranty contract"** on your new home.  Again, such warranty contracts will have a document that will provide details as to what is covered, for what period, and how to report and request warranty service.

| hDT | _____ | _____ |
|:---:|:---:|:---:|
| Initials | Initials | Initials |

The manufacturer may at times <u>contract</u> with Timberline service personnel to provide some warranty repairs... By providing this service, Timberline is not warranting the repairs.  Clearly, Timberline wants satisfied customers, and will help as they reasonably and legally can with communication and coordination between the customer and warranty provider.

| hDT | _____ | _____ |
|:---:|:---:|:---:|
| Initials | Initials | Initials |

As noted earlier, all items purchased from a Timberline retailer will be listed on the Form 500 Purchase Agreement.  Some items or services listed on the agreement are not provided by Timberline, but by other contractors. The other contractors are independent contractors and Timberline is not responsible for the work they do or the service they provide.  Such items or services may include site preparation, delivery, set-up, septic/sewer installation, or other items.

| hDT | _____ | _____ |
|:---:|:---:|:---:|
| Initials | Initials | Initials |

**Wheels and Axles**

You will note that on the Purchase Agreement "Wheels and Axles" or "Running Gear" will be listed as excluded from the purchased items.  The only function of these items is for transport of the home to a site.  Should you need the "running gear" to move your home, it may be rented from a retailer.  The "A frame" connector hitch will be removed and placed under the front of the home.

_IhDT_
Initials          _____          _____
                  Initials          Initials


**Site Inspection, Preparation, and Permits**

The site on which you plan to place your manufactured home must meet various requirements of the home manufacturer and regulations according to the state, county, or city within which it is located.  Any permit, tag, decal or license required by any city, county, state or utility company is not included.  It will be the Purchaser's responsibility to procure and pay for same.

The site must be cleared, graded, and vegetation or debris removed from area under the home.  The soil should be compacted, graded and leveled, so that water will not run or stand under the home site.  It is the buyer's responsibility to have any underground utilities or septic tanks/lines marked.  Any obstacles that must be removed, permanently or temporarily, must be completed by the purchaser prior to delivery.  (Cut trees, limbs; take down mailboxes, fences, or other potential obstacles). Purchaser will also be responsible for replacement of these items after delivery.  These and other site preparation requirements must meet the standards of the manufacturer and applicable state regulations.  Timberline will help customers identify which regulations may apply to specific sites, **but it is the responsibility of the customer to have the site properly and legally prepared and inspected.**

_IhDT_
Initials          _____          _____
                  Initials          Initials


**Right-of-Way or Easement**

If it is necessary to cross onto or through private property with the house towing trucks, or equipment needed to deliver or set-up your home, the buyer must obtain written permission from all affected property owners.
If any additional special equipment will be necessary to maneuver or place the home on your site, the cost for such will be your responsibility.  For example, the slope of the site, or "muddy" ground may require the use of a tow truck or tractor.  The cost or charges of such extra equipment is your responsibility.

_IhDT_
Initials          _____          _____
                  Initials          Initials

## Set-up

The delivery and set-up crews will place your home on the site according to the customer's directions as indicated by stakes marking each corner and one marking which direction the front door should be facing.  However, the customer or their agent must be present at delivery/set-up to confirm and approve the placement, in that stakes could be broken or disturbed in maneuvering the home onto the specific site.

Your set-up crew is an independent contractor.  If there is a problem with your set-up you should address your problem to the set-up crew and not Timberline.  Timberline is not responsible for: damage to the home being delivered or of other property damage due to inadequate maneuvering space; or for "rutting" and/or ground damage from the maneuvering of the house, tow truck, or other required equipment.  Any trash or debris will be placed by the set-up crew at the designated trash site, by the road or otherwise designated by customer.  Moving trash to locations more than 100 feet from the home site may require additional charges.

The set-up crews will install the block piers and tie-downs according to the manufacturer's recommendations and applicable state regulations.  Your home will be leveled according to the manufacturer's leveling recommendations.  The buyer is responsible for any re-leveling after the initial leveling and set-up.

_KDT_
Initials            _____            _____
                     Initials              Initials

## Arbitration Agreement

Part of your closing package will include a binding arbitration document.  By signing this document, you agree that any controversy or claim arising out of, or in any way relating to the sale of the manufactured home and the negotiations leading up to the sale, breach of contract, or other cause of action, will be settled solely by arbitration and not by court action.  The arbitration agreement provides that you waive your right to trial by jury.  Arbitration will be the sole process for the settlement of any and all disputes, claims or controversies between you and Timberline, related to the sale of your manufactured home.

_KDT_
Initials            _____            _____
                     Initials              Initials

## Loans/Consumer Credit

If financing of your home purchase is involved, the terms and conditions of the transaction are set forth by the various lenders and their regulating authorities and will be listed in their application and/or closing documents.  Timberline Homes, Inc. assumes no responsibility for the services or actions of said companies.  _KDT_
Initials            _____            _____
                     Initials              Initials

## Retailer Participation

Retailer may participate in programs offered by the company financing the purchase of your home.  Under this program, an incentive or participation fee may be paid to the retailer for homes sold by the retailer and which are financed by the finance company.  If this participation fee is paid, it will be paid directly by the finance company to the retailer and you will not be given any credit for the participation fee paid.

_KDT_
Initials          _____          _____
                   Initials              Initials

## Insurance

You may wish to, or may be required by someone financing your home to purchase insurance. You may purchase your homeowner's policy or other insurance with any organization you wish. You may be offered an opportunity to purchase insurance through THI Insurance, which is a wholly owned subsidiary of Timberline.  Timberline may receive some economic benefit from you purchasing insurance through THI Insurance.  Please note, that under no circumstances are you required to purchase insurance from THI Insurance and you may purchase it from any other reputable insurance company.

_KDT_
Initials          _____          _____
                   Initials              Initials

## Utilities:

**Water, Sewer, Gas, and Electrical Connections** – are the **responsibility of the buyer** to be completed and connected by a licensed contractor in accordance with the regulations of the county/city where your new home is located.

Once the utilities are connected, the contractor will be able to install the air conditioning unit. Air units typically come with 15 feet of pre-charged refrigerant line.  Thus, the buyer will need to make prior arrangements with the designated A/C contractor if they wish to place the exterior condensing unit more than 13 feet from the air handler portion of the unit inside the home.  Also, once the home is set-up and cleared by state inspection, the designated skirting or other underpinning can be installed.  Again, the A/C unit, skirting or any other attachments or additions such as decks, driveways, sidewalks, carports, are not warranted by Timberline.  Such items are not typically covered by the warranty terms of the manufacturer of the home. Warranty terms and conditions, if any, would be from the manufacturer of the specific product.

_KDT_
Initials          _____          _____
                   Initials              Initials

Legal Advice

If you have any questions about any matter addressed in this Agreement, or in any of the documents you are asked to sign, do not go forward with the closing. Timberline does not provide legal advice. You should contact an attorney of your choice to review the documents or answer any questions you have before you purchase your home.

## OTHER WARRANTIES

IT IS CLEARLY UNDERSTOOD AND ACKNOWLEDGED AS PER THE SIGNATURE BELOW, BY THE UNDERSIGNED PURCHASER(S) THAT THERE ARE NO OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, OTHER THAN THOSE PREVIOUSLY SET FORTH IN THIS CLOSING AGREEMENT. PURCHASER(S) FURTHER AGREES ANY ORAL AGREEMENT OR PROMISES, IF ANY, ANY PREVIOUS WRITTEN AGREEMENTS PRIOR TO THIS CLOSING PACKAGE, IF ANY, AND ANY OTHER TYPE OF INDUCEMENT TO PURCHASE THIS HOME IS ABSOLUTELY NULL AND VOID. PURCHASER(S) ALSO AGREES HE HAS READ AND UNDERSTOOD THE CLOSING PACKAGE WHICH SUPERSEDES ANY PREVIOUS WRITTEN OR ORAL PROMISES, GUARANTEES AND WARRANTIES.

THE UNDERSIGNED PURCHASER(S) HAS READ, UNDERSTANDS AND AGREES WITH ALL SIX PAGES OF THIS AGREEMENT AND FURTHER UNDERSTANDS THIS IS A LEGAL, BINDING AGREEMENT. PURCHASER(S) AGREES HE HAS ASKED ANY QUESTIONS AND RECEIVED SATISFACTORY ANSWERS TO ASSURE HE HAS A GOOD UNDERSTANDING OF ALL PAGES PRIOR TO THE SIGNING OF THIS AGREEMENT.

PURCHASER(S) HEREBY ACKNOWLEDGES RECEIVING A COPY OF THIS AGREEMENT:

AGREED this _7_ day of _June_, _2003_.

TIMBERLINE HOMES, INC.                    PURCHASER:

BY: _____                     _____

WITNESS:                                  _____

_____                         _____